UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :        09 Civ. 1819 (JG)

RAFIK A. NEWEIR                       :

                    **Plaintiff,**    :

                 -against-          :

LE PARKER MERIDIEN,         :

                  **Defendant.**    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS OR
# <u>FOR SUMMARY JUDGMENT</u>

**KANE KESSLER, P.C.**
**Attorneys for Defendant**
**Le Parker Meridien New York**
**Office & Post Office Address**
**1350 Avenue of the Americas**
**New York, NY 10019-4896**
**Tel. No. (212) 541-6222**
**Fax. No. (212) 541-9799**
<u>**ltraub@kanekessler.com**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 1

    a. Handbook and Hotel Practice ..................................................................................... 2

    b. Prior Suspensions and VSAs ..................................................................................... 3

    c. Proposed 2007 Termination ....................................................................................... 4

    d. Plaintiff Executed a Release of All Claims in the 2007 VSA ................................... 6

    e. Abrogation of the 2007 VSA ...................................................................................... 8

ARGUMENT

POINT I – STANDARD OF REVIEW FOR MOTIONS TO DISMISS
             UNDER 12(b) AND (6) ...................................................................................... 8

POINT II – PLAINTIFF EXECUTED A VALID RELEASE ............................................... 9

POINT III – THE RELEASE IS NOT VOIDABLE ON THE BASIS OF DURESS .............. 13

POINT IV – EXHAUSTION OF REMEDIES ....................................................................... 15

POINT V – PLAINTIFF HAS NOT STATED A VALID CLAIM
              UNDER SECTION 1981 OR 1983 .................................................................... 16

POINT VI – CLAIM ARISING UNDER TITLE VII IS TIME BARRED
              AND MUST BE DISMISSED ............................................................................ 17

POINT VII – THE STATE AND CITY LAW CLAIMS SHOULD BE DISMISSED AS
               THE COURT MAY DECLINE SUPPLEMENTAL JURISDICTION ................. 19

CONCLUSION ..................................................................................................................... 20

## PRELIMINARY STATEMENT

Defendant Le Parker Meridien New York ("Defendant" or "Hotel") respectfully submits this Memorandum of Law in support of its Motion to Dismiss or for Summary Judgment dismissing the Complaint of Plaintiff Rafik A. Neweir ("Plaintiff") for lack of subject matter jurisdiction and failure to state a cause of action pursuant to Rules 12 (b)(1) and (6) of the Federal Rules Civil Procedure.  As set forth in this Memorandum of Law and the Affidavit of Shari Clayman-Kerr sworn to October 13, 2009, Plaintiff Neweir's claim is barred by a settlement and release (hereinafter referred to as the "2007 VSA" or "Agreement").  Additionally, his claims under 42 U.S.C.§1981 and §1983 ("Sections 1981" and "Section 1983") are without merit, his claims arising under Title VII of the Civil Rights Act are time-barred, and his pendent state law claims must be dismissed.[1]

## FACTS

Plaintiff was hired as a Room Service Server on January 18, 1983 (Kerr Aff. ¶4). Plaintiff is a member of Local 6 of the New York Hotel and Motel Trades Council AFL-CIO (the "Union") and was an Assistant Union delegate (Kerr Aff. ¶5).  His employment as a Room Service Server at the Hotel is governed by a collective bargaining agreement (the "Union Contract") between the Union and the Hotel Association of New York City, Inc. (the "Association"), a trade association of which the Hotel is a member (Kerr Aff.¶5).

Article 25 of the Union Contract prohibits discrimination on the basis of race,

---

[1]. References to the affidavit of Hotel Human Resources Director Shari Clayman-Kerr are to Kerr Aff., and Exhibits thereto are Ex. To the extent unreported decisions have been cited in this Memorandum they are annexed to the Memorandum as Exhibit A.

creed, color, national origin, age and sex (Kerr Aff. ¶6, Ex. A).  Article 26 of the Union

Contract provides a three-step procedure for resolving any disputes arising between the

parties over the interpretation and application of the Union Contract and a procedure for

proposing the termination of Union delegates in Article 27 (Kerr Aff.¶¶6, 7 Ex. A).

Plaintiff as a Union delegate was subject to the procedures of Article 27 (Kerr Aff. ¶6).

Plaintiff's date of birth is January 18, 1954 (Kerr Aff. ¶7).  Pursuant to Schedule

B of the Union Contract, an employee may retire upon attaining twenty-five (25) years of

service if he/she is fifty-five (55) years of age or older (Kerr Aff. ¶7, Ex. A).

**a. Handbook and Hotel Practice**

The Hotel maintains an Employee Handbook that Plaintiff acknowledged

receiving, which provides for termination in the event of falsification of Hotel records

(Kerr Aff.¶8, Ex. B).  The Handbook also contains an anti-discrimination and anti-

harassment policy (Kerr Aff. ¶8, Ex. B).

In addition, the Hotel has issued specific policies concerning punch-in and punch-

out and sign-in and sign-out procedures in the form of memoranda issued to all Room

Service employees including Plaintiff (Kerr Aff. ¶9, Ex. C).  The initial memoranda is

dated December 21, 2004 and provides for mandatory punches at the scheduled start and

finishing times with the expectation that employees shall be at their work stations at the

scheduled starting time (Kerr. Aff. ¶9.  The policy was reiterated and expanded upon in

greater detail in a second memorandum of September 30, 2005 (Kerr Aff. ¶9, Ex. C).  On

October 17, 2005, Room Service Manager, Robyn Angrick, issued a memorandum

reiterating that every employee is to punch in/out and sign in/out (Kerr Aff.¶9, Ex. C).

Although Plaintiff's disciplinary history is extensive, the most relevant points

including his prior terminations and settlement agreements are summarized herein.

**b. Prior Suspensions and VSAs**

**(i) First Suspension and 2001VSA**

On November 3, 2001, the Hotel proposed the termination of Plaintiff's employment for unprofessional conduct by peering into Hotel guest rooms and on Hotel guest floors at unauthorized times (Kerr Aff. ¶10). He was also found in unauthorized possession of Hotel property – room keys (Kerr Aff ¶10). Although the infractions merited automatic termination from employment, the Hotel again acted with clemency to reduce his termination to a suspension following his grievance (Kerr Aff ¶10). Plaintiff grieved his termination, and on December 13, 2001, prior to his arbitration, the Hotel agreed to convert his termination to a suspension for thirty (30) days provided he agreed to be treated at the Members Health Assistance Program, and the parties executed a Voluntary Settlement Agreement ("2001VSA") (Kerr Aff. ¶10, Ex. D). Plaintiff was represented by Union counsel Joseph Farelli, Esq. and Union business agent Hazel Hazzard in negotiations (Kerr Aff. ¶10). The 2001 VSA was read to him, and he was questioned as to whether he understood and agreed to its terms by Impartial Chairperson Shriftman (Kerr Aff. ¶11). Paragraph 5 of the 2001 VSA contains a release of the Hotel from all liability "for any and all matters arising out of this grievance, under federal, state, city and local labor and discrimination laws and regulations" identical to that at issue herein in the 2007 VSA (Kerr Aff. ¶12, Ex. D). Plaintiff never sought to abrogate the terms of the 2001 VSA because he was coerced (Kerr Aff. ¶13).

**(ii) Second Suspension and 2006 VSA**

On or about October 30, 2006, Plaintiff was again discovered on Hotel guest

floors at unauthorized times (Kerr Aff. ¶14).  He was also found in unauthorized

possession of Hotel property (Kerr Aff. ¶14).  Although the infractions merited automatic

termination from employment, the Hotel again acted with clemency to reduce his

termination to a suspension following his grievance (Kerr Aff. ¶14).  The Plaintiff

entered into a second VSA ("2006 VSA") on November 17, 2006, reducing the proposed

termination to a thirty (30) day suspension, with a final warning written in boldface type:

**"This settlement shall serve as a final warning that any future violations of Hotel**

**policy and /or departmental rules will result in immediate termination."**  (Kerr Aff.

¶15, Ex. E, ¶7).  The 2006 VSA was read aloud to him on two (2) occasions, once by

Union Counsel, and by Rick Amato, Labor Mediator, in the presence of witnesses,

including Counsel, and his Union Business Agent, Carolyn Marshall (Kerr Aff. ¶16).

Plaintiff assented to its terms before signing (Kerr Aff. ¶16).  Paragraph 6 of the 2006

VSA contains the identical release language that is at issue in the 2007 VSA, releasing

the Hotel from "any and all matters arising out of this grievance under federal, state and

local labor employment and discrimination laws and regulations." (Kerr Aff. ¶17, Ex. E)

Plaintiff never claimed that he entered into the 2006 VSA under duress (Kerr Aff. ¶17).

**c. Proposed 2007 Termination**

On August 10, 2006, Plaintiff was counseled as he had signed out of Room

Service at 3 p.m. when he signed in on the banquet bartender sheet at 2:30 p.m. (Kerr

Aff.¶18, Ex. F).

On February 15, 2007, Plaintiff was late to work, punching in at 6:25 a.m.,

twenty-five (25) minutes after the start of his shift (Kerr Aff.¶19).  However, he signed

into the department at 6 a.m., thereby falsifying a Hotel record (Kerr Aff.¶19).  The Hotel

counseled Plaintiff concerning his behavior, giving him yet another opportunity to reform (Kerr Aff.¶19).  Yet despite the Hotel's clemency, one month later, Plaintiff committed the same infraction which precipitated the termination resolved in the final 2007 VSA (Kerr Aff.¶19).  In addition to the warnings in 2007, Plaintiff had been previously warned in 1986 and 2004 for the same infractions (Kerr Aff.¶19, Ex. G).

On March 9, 2007, Plaintiff again arrived one (1) hour late to work at 7 a.m. and again falsified Hotel records by signing in at 6 a.m. (Kerr Aff. ¶20).  When Plaintiff realized that his job was in jeopardy he contended that he made a "mistake," the same excuse that he has proffered for each prior infraction, despite the prior warnings and notice of Hotel policies (Kerr Aff. ¶20).  The Hotel found his defense unconvincing and proposed his termination from employment for Plaintiff's third offense of falsification of a Hotel document (Kerr Aff. ¶20).

Pursuant to Articles 26 and 27 of the Union Contract, Plaintiff grieved his proposed termination and Plaintiff, his Business Agent and the Hotel Manager David Cohen met at the Hotel (Kerr Aff. ¶21).2  As the grievance was not resolved, it was mediated before Labor Mediator Rick Amato where Plaintiff was represented by his Union Business Agent and Grievance Officer, Brian Lysell, on or about March 23, 2007 (Kerr Aff. ¶21).  At that time the Hotel proposed the same settlement terms incorporated in the 2007 VSA that Plaintiff accepted on April 5, 2007 (Kerr Aff. ¶21).  The matter was scheduled for arbitration on April 5, 2007 (Kerr Aff. ¶21).

---

2. In all likelihood, Hotel representatives including Mr. Cohen and Plaintiff and his Union Business Agents, Ms. Marshall and Ms. Hazzard had engaged in some negotiations concerning a proposed settlement at the Hotel.  However, the sequence of the negotiations described by Plaintiff in the Complaint is not credible as it does not follow the usual patterns of negotiation.  Plaintiff alleges that the Hotel first proposed a two (2)-week suspension, to which he objected as too severe.  The Hotel then increased the discipline to a four (4) week suspension which Plaintiff somehow (he does not detail why) was "forced to accept."

**d. Plaintiff Executed a Release of All Claims in the 2007 VSA**

On or about April 5, 2007, at a hearing held at the Office of the Impartial

Chairperson, the parties agreed to and executed the 2007 VSA (Kerr Aff.¶¶22, 26, Ex. I).

Plaintiff was represented by his Union Counsel, Joseph Farelli, Esq., and his Union

Business Agent, Hazel Hazzard, in negotiating the 2007 VSA (Kerr Aff. ¶22).  Plaintiff

was apprised of prior industry awards sustaining discharge in similar circumstances for

falsification of time records (Kerr Aff. ¶¶22, 26, Ex. I; See Hampshire House #2002-08).

In view of Plaintiff's years of service and proximity to retirement, in an effort to resolve

the dispute, the Hotel offered Plaintiff the option of converting his termination to a thirty

(30) day suspension, resigning on January 18, 2008 at age fifty-five (55) to ensure

retirement benefits, and receiving all accrued vacation benefits through March 2008 in

the amount of fifty-one (51) days (Kerr Aff.¶23).  In essence, the Hotel offered Plaintiff a

total of eleven (11) months compensation including vacation pay in return for his

resignation from employment, a release and a neutral letter of reference (Kerr Aff. ¶23).

Plaintiff initially rejected the Hotel's offer; however, in the face of the overwhelming

evidence against him and his prior disciplinary history, Plaintiff agreed to the terms of the

2007 VSA (Kerr Aff. ¶23).  Specifically, the Agreement provided that Plaintiff's

termination would be converted to a suspension in April, 2007, he would receive all pay

and benefits for nine (9) months, and on January 18, 2008 the Plaintiff would resign from

his position, and accrued vacation of fifty-one (51) days would be paid to him thereafter

(Kerr Aff.¶¶24, 26,Ex. I).  The Hotel would provide a service letter of reference upon

request ( Kerr Aff. ¶26, Ex. I).  The Agreement also provided that:  "This voluntary

settlement satisfies any and all claims and serves as a general release by the Grievant

against...the Parker Meridien Hotel and any of its subsidiaries (including its hotels) for any and all matters arising out of Employee's employment at the Hotel, including the separation therefrom, under federal, state and local labor and discrimination laws and regulations." (Kerr Aff. ¶26, Ex. I)  Pursuant to the terms of the Agreement, the grievance was also withdrawn (Kerr Aff. ¶26).  The Agreement also states that it was entered into voluntarily (Kerr Aff.¶26, Ex. I).

The 2007 VSA clearly and unequivocally states that Plaintiff releases all claims against the Hotel from any and all matters arising out of his employment, including the separation therefrom (Kerr Aff ¶26, Ex. I, ¶6 of the 2007 VSA).

**Moreover, as this was the third VSA that Plaintiff executed with the Hotel during his history of employment, it is not credible that Plaintiff would not understand its significance or was coerced.**

Prior to signing the 2007 VSA, Impartial Chairperson of the Hotel Industry, Elliott Shriftman, inquired of Plaintiff if he understood and agreed to its terms, and Plaintiff assented and signed the 2007 VSA in the presence of the Impartial Chairperson, Union Counsel, Union Business Agent, Hotel Human Resources Director Shari Clayman-Kerr and Hotel Association Counsel (Kerr Aff. ¶26).

Paragraph 7 of the 2007 VSA expressly provided that Plaintiff had seven (7) days following execution to revoke the 2007 VSA.  Plaintiff did not exercise his statutory option to revoke (Kerr Aff ¶¶26,27, Ex. I,¶7).  He instead accepted all benefits that accrued from signing the VSA, including conversion of his termination to a thirty (30) day suspension, and an agreement deferring his separation date to January 18, 2008, so that he could retire with sufficient credit and years of service to be eligible for a pension

(Kerr Aff ¶27).

The Hotel made no threats concerning the loss of his pension to Plaintiff, nor could it, because the matter was out of its hands and within the purview of an independent arbitrator (Kerr Aff. ¶28).  Plaintiff accepted the benefits and never revoked the 2007 VSA (Kerr Aff. ¶29).  Plaintiff never filed a grievance and arbitration concerning the 2007 VSA (Kerr Aff. ¶30).  Pursuant to the terms of the Agreement Plaintiff continued to work at the Hotel until January 18, 2008 and was compensated each week (Kerr Aff. ¶31).  He received his vacation and all benefits (Kerr Aff. ¶31).

**e. Abrogation of the 2007 VSA**

Following his resignation from employment, on or about April 30, 2008 Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of race and national origin and retaliation (Kerr Aff. ¶32, Ex. J).

On or about March 16, 2008, Plaintiff filed the instant Complaint, which was thereafter served on or about August 24, 2009 alleging discrimination on the basis of race and ethnicity in violation of 42 U.S.C. §1981 and §1983 and Title VII, and race, national origin and ethnicity, and retaliation under New York State Human Rights Law and New York City Human Rights Law (Kerr Aff. ¶33, Ex. L).

**ARGUMENT**

**POINT I**

**STANDARD OF REVIEW FOR MOTIONS
TO DISMISS UNDER 12(b) (1) AND (6)**

The Court may consider affidavits and other evidence continued in the pleading in resolving a 12 (b) (1) motion.  <u>Shapiro v. AOE/RICOH, Inc., et al.</u>, 1997 WL 107641

(S.D.N.Y. 1997).  A motion pursuant to Fed. R. Civ. P. 12(b)(6) is generally based solely

on the allegations of the Complaint.  Allen v. WestPoint-Pepperell, Inc., 945 F. 2d 40, 44

(2d Cir. 1991), cert. denied, 525 U.S. 1041 (1998).  Evidence outside the pleadings may

be considered, converting the motion herein to one for all or partial summary judgment.

Carter v. Stanton, et al, 405 U.S. 669 (1972); Chambers, et al v. Time Warner, Inc., 282

F. 3d 147 (2d Cir. 2002).  However, although documents that are not incorporated in the

pleadings cannot usually be considered in a Rule 12 motion without converting the

motion to one under Fed. R. Civ. Pro. 56, if the parties do not dispute the authenticity of

the documents or the documents are central to plaintiff's claim, the Court may treat them

as part of the pleadings and dispose of the matter under Rule 12.  Watterson v. Page, 987

F. 2d 1 (1st Cir. 1993).

## POINT II

### PLAINTIFF EXECUTED A VALID RELEASE

A valid release that is clear and unambiguous on its face and which is knowingly

and voluntarily entered into will be enforced as a private agreement between the parties.

Appel v. Ford Motors Co., 111 A.D. 2d 731, 732, 490 N.Y.S. 2d 228 (2d Dept. 1985).

The factors that guide the court to determine whether a release is knowingly and

voluntarily entered into include the clarity of the agreement, whether the agreement was

read to him, and plaintiff's opportunity to consult with a representative before signing.

Marshall v. Cooper, et al., 1999 U.S. App. LEXIS 12106 (2d Cir., June 10, 1999); Skloth

v. United Merchants & Manufacturers, Inc., 163 A.D. 2d 104, 559 N.Y.S. 2d 280 (1st

Dept. 1990).  Federal courts, including the Second Circuit Court of Appeals and this

Court have evaluated releases in view of the "totality of the circumstances," and consider

the following factors as evidence of voluntariness: "1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law." Bormann v. AT&T Communications, Inc., 875 F. 2d 399, 402 (2d Cir. 1989), cert. denied, 493 U.S. 924 (1989).

In this instance, Plaintiff was represented by the Union Counsel and Business Agent at a hearing at the Office of the Impartial Chairman of the Hotel Industry.  The Agreement was read to him and thoroughly explained to him by the Impartial Chairperson and he acknowledged he understood and agreed to it before he signed it. Plaintiff participated in negotiating the terms of the Agreement and had ample time to consider the same and to consult counsel before signing it.  Plaintiff admitted at his unemployment appeal hearing before ALJ Rosenberg that he knowingly and voluntarily entered into the Agreement and consulted with counsel before signing the Agreement (Kerr Aff. ¶34, Ex. L).  Moreover, Plaintiff had seven days to revoke the agreement after signing it.

New York Courts have held that a party is bound to a contract to which his signature is affixed.  Shklovskiy et al v. Khan, 273 A.D. 2d 371, 709 N.Y.S. 2d 208 (2d Dept. 2000).

> ...the release is a contract 'whose interpretation is governed by principles of contract law' Metz v. Metz, 175 AD2d 938, 939; see, Stone v. National Bank & Trust Co.,188 AD2d 865, 867) 'Where the language of the release is clear, effect must be given to the intent of the parties as indicated by the

language employed (see Stone v. National Bank & Trust Co...[supra]; Metz v Metz...[supra]; see also, Mangini v. McClurg, 24 NY2d 556, 562' (Cramer v Newburgh Molded Prods., 228 AD2d 541, lv denied 89 NY2d 803). The release of defendants from all causes of action arising out of or related to plaintiff's employment, including any arising from the Executive Law, bars the causes of action alleging age discrimination under the Executive Law (see, Cramer v. Newburgh Molded Prods., supra; Stone v National Bank & Trust Co., supra at 867-868). Plaintiff cannot avoid the effect of this 'plain and unambiguous' release on the ground that he did not understand its terms (Koster v Ketchum Communications, 204 AD2d 280, lv dismissed 85 NY2d 857) or that he failed to consult an attorney before signing it (see Skluth v United Merchants & Mfrs., supra, at 107). Nor is the alleged breach of defendants' obligation to provide outplacement services under the terms of the release a ground for invalidating the release (see, Post v. Thomas, 212 NY 264, 274, rearg. denied 212 NY 585; Elson v Delaney, 47 AD 2d 708, 709). Goode v. Drew Building Supply, Inc., 266 A.D.2d 295, 697 N. Y.S.2d 417, 418 (4th Dept. 1999).

In 2003, the Southern District Court of New York enforced the very same agreement that Plaintiff executed with the identical release when it granted the Hotel's Motion to Dismiss. Perez v. The Plaza Hotel, 2003 WL 21135769 (S.D.N.Y., May 16, 2003) (copy annexed hereto). Similarly, the Supreme Court of New York, County of Queens, enforced the very same agreement that Plaintiff executed and upheld the identical release of all claims when it granted the Hotel's motion for summary judgment in an employment discrimination case. Abushi v. The Plaza Hotel in New York, et. al, Index No. 1651/2000. A copy of the decision of the Honorable Simeon Golar, J.S.C. is attached hereto. In Abushi, the Court concluded:

It is well settled that a 'valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties' (Skluth v. United Merchants & Mfrs., Inc., 163 AD2d 104, 106 lv granted 76 NY2d 711, appeal withdrawn 79 NY2d 976; Appel v. Ford Motor Co., 111 AD2d 731, 732; see also Goode v. Drew Bldg. Supply, Inc., 266 AD2d 925). Here, the language of the release given in conjunction with the settlement clearly and unambiguously covers the subject mater of this action. While the release may be attacked on the grounds of fraud, duress, or undue

> influence (<u>Fleming v. Ponziani</u>, 24 NY2d 105; <u>Skluth v. United Merchants</u>
> <u>& Mfrs., Inc.</u>, <u>supra</u>), here, plaintiff's only challenge is that he did not
> understand the settlement agreement. Plaintiff cannot repudiate the legal
> effect of a 'plain and unambiguous' release on the ground that he did not
> understand the terms (<u>Koster v. Ketchum Communications</u>, 204 AD2d
> 280, <u>appeal dismissed</u>, 85 NY 2d 857). Moreover, the agreement
> explicitly states that plaintiff entered into it voluntarily and that the terms
> thereof were acceptable to him.

<u>Abushi v. The Plaza Hotel, et al</u>, <u>supra</u> at p. 2.

A release may not be treated lightly, and there is a long and clear line of

case precedent in New York State enforcing such a contract.  <u>Stone v. National</u>

<u>Bank and Trust Company et al</u>, 188 A.D.2d 865, 591 N.Y.S. 2d 609 (3rd Dept.

1992).

Federal Courts have also enforced such releases, particularly in light of a

plaintiff's subsequent ratification of the agreement by the acceptance of benefits.

> Ratification is an act by which an otherwise voidable and,
> as a result, invalid contract is confirmed. <u>Clark v. Buffalo</u>
> <u>Wire Works Co.</u>, 3 F. Supp.2d 366, 371-72 (W.D.N.Y.
> 1998) (citations omitted).  It occurs at the point that a party
> learns that his prior agreement not to sue is voidable but
> continues to accept the benefits of that agreement.
> <u>Kristoferson v. Otis Spunkmeyer, Inc.</u>, 965 F. Supp. 545,
> 548 (S.D.N.Y. 1997).  A key element of ratification,
> therefore, is the failure of the plaintiff to tender back, or to
> offer to tender back, the consideration that he received in
> exchange for executing the release.  <u>Fleming v. United</u>
> <u>States Postal Serv. AMF O'Hare</u>, 27 F. 3d 259, 260-61 (7th
> Cir. 1994); <u>Williams v. Phillips Petroleum Co.</u>, 23 F. 3d
> 930 (5th Cir. 1994); <u>Clark</u>, 3 F. Supp. 2d at 371; <u>Dorn</u>, 975
> F. Supp. at 394; <u>Kristoferson</u>, 965 F. Supp. at 549 n. 5).
>
> <u>Livingston v. Bev-Pak, Inc., d/b/a Adirondack Beverages</u>,
> 112 F. Supp. 2d 242, 249 (N.D.N.Y. 2000).

In the instant case, Plaintiff accepted the benefits of the 2007 VSA, nine (9)

months salary, fifty-one (51) days of vacation and a service letter of reference.  Under the

circumstances, Plaintiff is not permitted to avoid his contract. Plaintiff is bound by the clear language in the 2007 VSA releasing all claims arising from his employment, including all claims arising under federal, state and local discrimination laws. Accordingly, the Agreement clearly bars Plaintiff's claims and his Complaint must be dismissed.

## POINT III

### THE RELEASE IS NOT VOIDABLE ON THE BASIS OF DURESS

Plaintiff attempts to defeat the release by alleging economic duress by the forfeiture of his pension benefits should he lose his grievance at arbitration. As an initial matter, New York courts have held that where a release is clear, economic duress will not lie. Capstone Enterprises of Port Chester v. County of Westchester, 262 A.D.2d 343, 691 N.Y.S.2d 544 (2d Dept. 1999).

To establish economic duress Plaintiff must prove the following elements: the agreement was obtained "(1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." Mazurkiewicz v. N.Y.C.Health and Hospitals Corp., 585 F. Supp.2d 491, 500 (S.D.N.Y. 2008) citing Frumkin v. International Business Machines Corp., 801 F. Supp. 1029, 1044 (S.D.N.Y. 1992).  See also, Short v. Keyspan Corp. Serv., LLC, 11 Misc. 3d 1076 (A), 816 N.Y.S. 2d 701, 2006 WL 908629 *5 (S. Ct. Kings Cty. 2006) citing Kamerman v. Steinberg, 891 F. 2d 424, 431 (2d Cir. 1989); Joseph v. Chase Manhattan Bank, N.A., 751 F. Supp.31, 35 (E.D.N.Y. 1990); Stewart M. Muller Constr. Co. v. N.Y. Telephone Co., 40 N.Y. 2d 955, 956 (1976).  See also, Prichard v. 164 Ludlow Corp., 114 Misc. 2d 1202(A), 831 N.Y.S. 2d 362 (Sup. Ct. N.Y. Cty. 2006),

aff'd, 49 A.D. 2d 408, 854 N.Y.S. 2d 53 (1ˢᵗ Dept. 2008). The fact that an employee has

an alternative such as pursuit of a discrimination claim in court dispels a claim of duress,

which necessarily depends upon the absence of choice. Short v. Keyspan, supra, citing

Joseph, 751 F. Supp. at 35. Duress must be proven to be as result of defendant's own

conduct. Mazurkiewicz v. N.Y.C. Health and Hospitals Corp., supra.

Moreover, the claim of duress makes the 2007 VSA voidable, not void. Short v.

Keyspan, supra at *6. Where a plaintiff accepts the benefits and does not challenge the

agreement until months later, Plaintiff has waived the defense. Wright v. Eastman Kodak

Co., 445 F. Supp. 2d 314 (W.D.N.Y. 2006); Zhai v. Chemical Bank, 2003 WL 21402077

(1ˢᵗ Dept. 2003) (copy attached); Short v. Keyspan, supra. (failure to challenge agreement

and acceptance of benefits for 17 months constitutes a waiver.)

In the instant case the Hotel did not threaten Plaintiff. The Hotel proposed the

offer incorporated in the 2007 VSA on March 23, 2007 more than two weeks before

Plaintiff signed the Agreement. Plaintiff thus had ample time to consider its terms.

Plaintiff was free of course to challenge his discharge at arbitration. He was duly

apprised by his Union representative and counsel of the consequences of a loss of his

grievance at arbitration, that if his discharge was sustained due to his own misconduct, he

would forfeit his pension benefits. The Hotel made no threats in this regard to Plaintiff,

nor could it, because the matter was out of its hands and within the purview of an

independent arbitrator. Plaintiff was free to reject the Hotel's offer, pursue his grievance

through arbitration and file a discrimination claim in April 2007. Plaintiff was also free

to revoke the 2007 VSA within seven (7) days of signing, but he did not. Plaintiff

accepted the benefits of the 2007 VSA and never revoked the Agreement. More than one

year after signing the Agreement, Plaintiff filed a Charge with the EEOC, and after two years filed the instant Complaint. Plaintiff has waived any defense of duress as he has ratified the 2007 VSA. Plaintiff cannot simultaneously reap the benefits of and breach his Agreement.

Plaintiff relies upon the decision of the Unemployment Appeal Board affirming the findings of Administrative Law Judge ("ALJ") Rachelle Rosenberg in support of its claims of "duress" (decisions of the Appeal Board and ALJ are annexed hereto). At the outset, New York Labor Law Section 623 provides "no finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude litigation of any issue of fact or law in any subsequent action or proceeding."

An unemployment appeal board's determination does not dictate the outcome of a Title VII or other discrimination claim. <u>Lucas v. South Nassau Communities Hosp.</u>, 54 F. Supp. 2d 141, 151-152 (E.D.N.Y. 1998). Moreover, the findings of the Appeal Board were limited to the narrow issue of whether Plaintiff committed gross misconduct in falsifying records or whether he "voluntarily resigned" under the body of law governing administrative decisions before the agency – not whether he released all claims. The decision was never affirmed on appeal and thus is not final and binding on this Court.

<u>**POINT IV**</u>

<u>**EXHAUSTION OF REMEDIES**</u>

Inasmuch as the instant dispute arises from a breach of an Agreement negotiated in a grievance and arbitration proceeding, Plaintiff is required to exhaust his administrative remedies and bring a grievance and arbitration proceeding concerning the

alleged claim of duress before bringing a court claim.  Local 300, National Postal Mail Handlers Union, AFL-CIO v. United States Postal Service, 1994 U.S. Dist. LEXIS 16610 (S.D.N.Y., November 21, 1994), aff'd, 66 F. 3d 309 (2d Cir. 1995).  Plaintiff has not brought any grievance or arbitration concerning the 2007 VSA (Kerr Aff. ¶30).

## POINT V

### PLAINTIFF  HAS NOT STATED A
### VALID CLAIM UNDER SECTION 1981 OR 1983

Section 1981 by its terms prohibits discrimination only on the basis of race. 42 U.S.C. §1981; St. Francis College v. Al-Khazaji, 481 U.S. 604 (1987); Runyon v. McCrary, 427 U.S. 160 (1976); Sandler v. Marconi Circuit Technology Corp., 814 F. Supp. 263 (E.D.N.Y. 1993).   In St. Francis College v. Al-Khazaji, the Supreme Court stated that in enacting Section 1981, Congress intended to protect from discrimination identifiable classes of person who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics, "but not based solely on the place or nation of his origin or his religion."  See also, Anderson v. Conboy, 156 F. 3d 167 (2d Cir. 1998).  Section 1981 does not apply to claims of intentional discrimination on the basis of national origin.  Shah v. State Dept. of Civil Service, supra.; Manzanares v. Safeway Stores, Inc., 593 F. 2d 968 (10th Cir. 1979);  Hitchins v. County of Montgomery et al., 2002 U.S. Dist. LEXIS 2050 (E.D. Pa., February 11, 2002). The Second Circuit has dismissed a Section 1981 cause of action finding an Egyptian Copt is not a distinct race. Hafiz v. Avis Rent-a-Car System, 242 F. 3d 365 (2d Cir. 2000).

In the instant case, Plaintiff's allegation of retaliation and intentional discrimination based solely upon his Egyptian national origin must be dismissed (Complaint ¶2).  Persons of North African and Middle Eastern descent are classified as

belonging to the white race pursuant to the Equal Employment Opportunity

Commission's EEO-1 form.  Section 1981 does not encompass claims of discrimination

by a white person against another of the same race. St. Francis College v.Al-Khazaji,

supra.  Thus, the pleading is patently deficient and fails to allege intentional

discrimination on the basis of race under 42 U.S.C. §1981.  Sparrow v. United Air Lines,

Inc., 216 F. 3d 1111 (D.C. Cir. 2000).

Similarly, the claims arising under Section 1983 must be dismissed inasmuch as

there is no State action.  Back v. Hastings on Hudson Union Free School District, 365 F.

3d 107 (2d Cir. 2004); Zalewska v.  Cty. of Sullivan, 316 F. 3d 314, 323 (2d Cir. 2003).

As the Hotel is a private institution, and not a state or public entity, this cause of action

must be dismissed (Kerr Aff. ¶3).

## POINT VI

## CLAIM ARISING UNDER TITLE VII IS TIME BARRED
## AND MUST BE DISMISSED

It is well settled that as a prerequisite to filing and maintaining a Title VII action

in federal court, a plaintiff must first timely file a charge of discrimination with the

EEOC.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817 (1973).

This filing requirement is similar to a statute of limitations and failure to meet that filing

requirement bars a plaintiff's claim. Zipes v. Trans World Airlines, 455 U.S. 385, 388,

102 S.Ct.1127 (1982), reh'g denied,  456 U.S. 940 (1982).

Pursuant to 42 U.S.C. §2000e-5(e), in a state such as New York which has a fair

employment practices agency and is thus a so-called "deferral" state, a charge of

discrimination must be filed with EEOC within 300 days of the alleged unlawful

employment practice. 42 U.S.C. §2000e-5(e); Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 109-15, 122 S. Ct. 2061 (2002); <u>Pikulin v. City Univ. of New York</u>, 176 F.3d 598, 599 (2d Cir. 1999), <u>aff'd</u>, 173 F.3d 843 (2d Cir. 1999); <u>Butts v. New York Dep't of Hous.Pres. & Dev.</u>, 990 F.2d 1397, 1401 (2d Cir. 1993), <u>aff'd</u>, 173 F.3d 843 (2d Cir.1999), citing <u>Gomes v. Avco Corp.</u>, 964 F.2d 1330, 1332-33 (2d Cir. 1992); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 765 (2d Cir. 1998).

The Plaintiff's Charge was filed with the EEOC on March 28, 2008, Thus, any incidents alleged to have occurred prior to June 2, 2007 – 300 days before the filing of his EEOC charge – are time-barred under Title VII. <u>Quinn</u>, <u>supra</u>, 159 F.3d at 764-765.

Plaintiff cannot defeat the time bar by arguing that the acts alleged in his Complaint are a "continuing violation" which provide an exception to the normal accrual date of a discrimination claim. <u>Harris v. City of New York</u>, 186 F.3d 243,248 (2d Cir.1999). A "continuing violation" may be established where there is evidence of an ongoing, continuous policy or practice. <u>Nat'l R.R. Passenger Corp</u>, 536 U.S. at 102,107, 122 S.Ct. 2061; <u>Harris</u>, 186 F.3d at 248; <u>Quinn</u>, <u>supra</u>, 159 F.3d at 765; <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F. 3d 708, 713 (2d Cir. 1996).   The courts have consistently held that discrete and completed acts, including discharge, do not constitute a continuing violation. <u>Elenmayer v. ABF Freight Sys.Inc.</u>, 318 F.3d 130, 134-35 (2d Cir. 2003); <u>see</u> <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 907 (2d Cir. 1997), <u>cert. denied</u>, 528 U.S. 817 (1999); <u>Aggarwal v. New York City Health & Hosp. Corp.</u>, 2000 WL 172787 at *4 (S.D.N.Y. Feb. 10, 2000); <u>Meckenberg v. New York City Off-Track Betting</u>, 42 F. Supp. 2d 359, 371-72 (S.D.N.Y. 1999).

In this case, Plaintiff's cause of action for discharge based upon discrimination accrued at the latest on April 5, 2007, when he signed the 2007 VSA.  This was clearly a

discrete, not continuous act by the Defendant, and it occurred considerably earlier than 300 days before Plaintiff's charge of discrimination was filed with the EEOC on March 28, 2008. For that reason, Plaintiff's Title VII cause of action is clearly time barred and must be dismissed.

## POINT VII

### THE STATE AND CITY LAW CLAIMS SHOULD BE DISMISSED AS THE COURT MAY DECLINE SUPPLEMENTAL JURISDICTION

The supplemental jurisdiction statute provides that a district court may decline to exercise jurisdiction over supplemental state-law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). Should the Court grant summary judgment on Plaintiff's single federal cause of action, and decline to exercise supplemental jurisdiction over the remaining state-law claims, the Court may dismiss such claims without prejudice. Colon v. City of New York, 2009 WL 1424169 *9 (S.D.N.Y. May 21, 2009). "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" Birch v. Pioneer Credit Recovery, Inc., 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2d Cir.1986); Nealy v. Berger, 2009 WL 704804 *10 (E.D.N.Y. March 16, 2009); Jouthe v. City of New York, 2009 WL 701110 *22 (E.D.N.Y. March 10, 2009); Darcy v. Lippman, 2008 WL 629999 *18 (S.D.N.Y. March 10, 2008). As the Section 1981 claims should be dismissed, the pendant claims of discrimination under the State and City Laws should also be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claims should be granted in its entirety, and Defendant should be granted the costs and disbursements of this action, together with such other, further and different relief as to this Court may seem just, proper and equitable.

Dated:      New York, New York
            October 15, 2009

                                    **KANE KESSLER, P.C.**
                                    Attorneys for Defendant
                                    Le Parker Meridien New York


                        By:  _____
                                    Lois M. Traub (LMT 9977)
                                    1350 Avenue of the Americas
                                    New York, NY 10019
                                    Tel. No. (212) 519-5120
                                    Fax No. (212) 541-9799
                                    ltraub@kanekessler.com